**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

)
AMERICAN WHITEWATER,                         )
                          Petitioner,        )
                                             )
CONSERVATION LAW                             )
FOUNDATION, MAINE RIVERS,                    )
                          Intervenors,       )
                                             )
v.                                           )   No. 23-1291
                                             )
FEDERAL ENERGY                               )
REGULATORY COMMISSION,                       )
                          Respondent,        )
                                             )
ACLARA METERS, LLC,                          )
                          Intervenor,        )
_____             )

**PETITIONER AMERICAN WHITEWATER'S, INTERVENOR**
**CONSERVATION LAW FOUNDATION'S AND INTERVENOR MAINE**
**RIVERS' JOINT RESPONSE IN OPPOSITION TO INTERVENOR**
**ACLARA METERS LLC'S MOTION TO DISMISS PETITION FOR**
**REVIEW**

Petitioner American Whitewater, Intervenor Conservation Law Foundation, and Intervenor Maine Rivers (collectively "American Whitewater" or "Petitioner") file this Joint Response in Opposition to Intervenor Aclara Meters LLC's ("Aclara") Motion to Dismiss American Whitewater's Petition for Review. This Court has jurisdiction because Petitioner timely filed its Petition for Review within

60 days of the Federal Energy Regulatory Commission's ("FERC") September 21, 2023 Order Addressing Arguments Raised on Rehearing. To find otherwise is contrary to controlling Circuit case law and the plain language and intent of the Federal Power Act ("FPA"), 16 U.S.C. § 825*l*(a) and (b). Therefore, the Court should deny Aclara's motion.

## **BACKGROUND**

This case involves the Somersworth Hydroelectric Project ("Project"), which consists of two dams on the Salmon Falls River that forms a portion of the border between Maine and New Hampshire. In 2016, with the federal license for the Project set to expire, Aclara, the Project's owner and operator, initiated the relicensing process to obtain a new 30–50-year license from FERC. Aclara initially sought a new federal license for the Project even though the Project had not been operational since 2011 due to the failure of the penstock that conveys water to the powerhouse. American Whitewater has been a participant in the Project's relicensing process since its outset.

In 2019, Aclara changed course and, instead of a new license, it notified FERC that it intended to decommission the Project and surrender its license, including a plan to leave the two dams in place. American Whitewater, along with state and federal resource agencies, non-governmental organizations, and other stakeholders filed comments in response to Aclara's surrender application asking

that FERC consider an alternative of dam removal. American Whitewater advocated for dam removal to restore recreation opportunities to the Salmon Falls River and to restore the river to its natural condition. Resource agencies and other stakeholders submitted comments asserting that leaving the dams in place also would block the restoration of migratory fish to the Salmon Falls River as the dams block upstream and downstream fish passage. American Whitewater formally intervened in the surrender proceedings on September 27, 2019.

Notwithstanding the plethora of requests that FERC consider dam removal, FERC approved the licensee's surrender plan allowing Aclara to decommission the Project and surrender its license without removing the project dams. *See Aclara Meters, LLC*, 183 FERC ¶ 62,095 (May 22, 2023) ("Surrender Order"). On June 20, 2023, American Whitewater timely sought rehearing, asking the Commission to reconsider its Surrender Order to address the following issues:

> 1.      Did the Commission err in failing to determine that dam removal is in the public interest?
> 2.      Did the Commission err by arbitrarily and capriciously rejecting the dam removal alternative?
> 3.      Did the Commission err by failing to comply with Section 401(a)(1) of the Clean Water Act?[1]

On July 21, 2023, FERC issued a *Notice of Denial of Rehearing by Operation of*

---

[1] Importantly, the Surrender Order did not address the issue of the Project's compliance with Section 401 of the Clean Water Act. *See Aclara Meters, LLC*, 183 FERC ¶ 62,095 (May 22, 2023).

*Law and Providing for Further Consideration. Aclara Meters, LLC*, 184 FERC ¶ 62,047 (July 21, 2023) ("Notice"). The Notice stated American Whitewater's "request for rehearing *may be deemed to have been denied*." *Id*. (citing the FPA, its implementing regulations, and *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc)) (emphasis added). FERC's Notice continued:

> As provided in 16 U.S.C. § 825*l*(a), the request for rehearing of the above-cited order filed in this proceeding *will be addressed in a future order* to be issued consistent with the requirements of such section. As also provided in 16 U.S.C. § 825*l*(a), the Commission may *modify or set aside its above-cited order, in whole or in part,* in such manner as it shall deem proper.

*Id*. (emphasis added).[2]

Given FERC's stated intention to address the request for rehearing in a "future order"—an order that, according to FERC, could set aside the Surrender Order in its entirety—American Whitewater did not file a petition for review on FERC's Notice. On September 21, 2023, FERC issued an *Order Addressing Arguments Raised on Rehearing* ("Rehearing Order") pursuant to 16 U.S.C. § 825*l*(a), which addressed each of the arguments American Whitewater raised in its

---

[2] FERC's Notice in this case contrasts with the other type of notice FERC issues on rehearing requests after this Court decided *Allegheny*. The second type of notice FERC issues is a "Notice of Denial of Rehearing by Operation of Law," which "announces that the Commission does not intend to issue a merits order in response to the rehearing request." *Recent Changes in Commission Rehearing Practice – Item A-3*, Docket No. AD20-27-000, (Sept. 17, 2020) https://www.ferc.gov/news-events/news/recent-changes-commission-rehearing-practice-item-3# (last visited Dec. 15, 2023).

June 20, 2023 Rehearing Request. *Aclara Meters, LLC*, 184 FERC ¶ 61,183 (Sept. 21, 2023). FERC rejected American Whitewater's claims, finding that: 1) license surrender without requiring dam removal was in the public interest, 2) FERC's determination was not arbitrary and capricious, and 3) the Surrender Order did not violate Section 401 of the Clean Water Act. *Id.* American Whitewater subsequently filed a Petition for Review with this Court on October 23, 2023, within the statutorily-prescribed 60-day period from the issuance of the Rehearing Order. Docket No. 2.

On December 7, 2023, Aclara filed a Motion to Dismiss American Whitewater's Petition for Review as untimely. Docket No. 16. For the reasons discussed below, American Whitewater respectfully requests the Court deny Aclara's motion.

## ARGUMENT

Contrary to Aclara's arguments, there is more than one path to judicial review under 16 U.S.C. § 825*l*. American Whitewater does not dispute the fact that judicial review was available after the denial by operation of law. The point on which American Whitewater and Aclara disagree is whether or not American Whitewater was *required* to petition for review after the denial by operation of law in order for this Court to have jurisdiction. But as the case law makes clear, filing a petition for review after a deemed denial is not the sole way by which petitioners

can obtain jurisdiction. American Whitewater's filing of a petition for review

within 60 days of the merits Rehearing Order provided a second alternative way to

obtain jurisdiction. This path to jurisdiction has been solidified by controlling

Circuit case law, persuasive out-of-Circuit authority, and is mandated by the plain

language of the FPA. Moreover, policy and equity considerations strongly weigh in

favor of finding jurisdiction in this case.

I.   **This Court's controlling decision in *Environmental Defense Fund*
     supports jurisdiction.**

This Circuit's decision in *Environmental Defense Fund v. FERC*, 2 F.4th

953 (D.C. Cir. 2021) ("*EDF*") is directly analogous and should control the

outcome of this case. *See* Mot. at 10–11. In *EDF*, this Court faced the precise

jurisdictional issue and procedural fact pattern presented here. There, FERC issued

a tolling order on October 1, 2018, and followed it with a Rehearing Order on

November 21, 2019. *EDF*, 2 F.4th at 971–72. As in the instant case, "Intervenor-

Respondents (but not the Commission)" challenged the petition as untimely under

*Allegheny*, arguing EDF should have filed it within 60 days of the tolling order. *Id*.

at 972. Citing prior circuit precedent, the *EDF* Court rejected Intervenor-

Respondent's argument, stating:

> the 60-day requirement . . . did not preclude our consideration of a
> petition for review from a final denial of relief, *even if there had been
> a deemed denial in the interim and the petition for review was filed
> more than 60 days following that deemed denial*.

*Id.* (citing *Texas-Ohio Gas Co. v. Fed. Power Comm'n*, 207 F.2d 615 (D.C. Cir. 1953)) (emphasis added). Aclara attempts to downplay this binding precedent, stating that *EDF* only "suggest[s] that *Allegheny Defense Project* did not disturb previous precedent in which the Court allowed an aggrieved party to seek review from an order on rehearing issued more than 60 days after a deemed denial." Mot. at 10. However, the *EDF* Court was much more emphatic on this point: "*Allegheny Defense Project* did not disturb this binding precedent, which is squarely controlling in this case." *EDF*, 2 F.4th at 972. So too here.

Aclara attempts in vain to distinguish *EDF* because the deemed denial in that case was "a tolling order—*granting* rehearing for purposes of further consideration—issued in 2018, prior to FERC's change in rehearing practice following *Allegheny*." Mot. at 10 (emphasis in original). Aclara's argument is unavailing for at least two reasons. First, both *Allegheny* and FERC's change in practice preceded the *EDF* decision, meaning the *EDF* Court was well aware of both and they did nothing to alter its conclusion that EDF's petition was timely filed.[3] Second, the *EDF* Court explicitly noted that even though *Allegheny* "found that the tolling order failed to prevent a deemed denial," it still went on to "evaluate the merits of *both* sets of petitions for review, including the later set of

---

[3] Indeed, the author of *Allegheny*, Judge Millett, was also on the panel that decided *EDF*.

petitions filed more than 60 days following the date of 'deemed denial.'" *EDF*, 2 F.4th at 972 (emphasis in original). The message of the *EDF* court's reading of *Allegheny* is clear: petitioners are not required to file a petition on an earlier deemed denial of a timely rehearing request to obtain this Court's jurisdiction so long as the petitioner files a timely petition on the later order on the merits, which is exactly what American Whitewater did here.[4] *See also N.Y. State Dep't of Conservation v. FERC*, 991 F.3d 439, 445–46 (2d Cir. 2021) (reaching same conclusion as *EDF* in interpreting *Allegheny*) ("*NYSDEC*").

This Court's discussion in the now-vacated *Sierra Club v. FERC* case does not undermine *EDF*. 68 F.4th 630, 645 (D.C. Cir. 2023), *vacated on other grounds*, 2023 WL 5537562 (Aug. 25, 2023); *see* Mot. at 8–10. In *Sierra Club*, the issue before the Court was whether, if petitioners filed a timely petition for review after the deemed denial, if they also were required to file a second petition for review of a later FERC rehearing order. *Sierra Club*, 68 F.4th at 645. The Court concluded a later petition was not required for it to have jurisdiction over both the original order and the later rehearing order. *Id.* at 646. *Sierra Club* did not answer the precise question posed here—if a petition for review is not filed after the deemed

---

[4] The fact that any "petition for review of the tolling order [in *EDF*] would have been deemed premature" is irrelevant. *See* Mot. at 11. *EDF*'s holding did not hinge on the nature of the deemed denial being an invalid tolling order. *See EDF*, 2 F.4th at 972.

denial but is filed after the later rehearing order would jurisdiction attach under

FPA § 825*l*(b)? *Sierra Club* did not need to reach this question because it was not

faced with that procedural fact pattern, so any discussion about the appropriate

jurisdictional outcome if a petition is timely filed after a later rehearing order is

dicta at most[5] from a vacated opinion. And, in any event, *EDF* answers this

question directly, rejecting Aclara's theory. Denial of Aclara's motion would

harmonize *EDF* with the holdings in *Allegheny* or *Sierra Club*. *See Harmon v.*

*Sharp*, 936 F.3d 1044, 1088 (10th Cir. 2019) (Holmes, J., concurring) ("'A court

considering discordant decisions must first determine whether the perceived

conflict between them is real,' and '[i]f at all possible, the opinions should be

harmonized.'") (quoting BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL

PRECEDENT § 36, at 300 (2016)). In contrast, granting Aclara's motion would run

contrary to the long-standing binding precedent upheld in *EDF*, binding precedent

that *Sierra Club* did not disturb.

---

[5] In *Sierra Club*, the court was answering a very different question of whether the petitioners were *required* to file two petitions for rehearing so that the court could examine the merits of both actions. 68 F.4th at 646. The court found that two petitions was unnecessary to have jurisdiction over both, because one petition validly gave jurisdiction over the original order, and FERC's second order pertains directly to that original order. *Id*. The court's analysis was based explicitly on Fed. R. App. P. 15(a)(2) and the specification requirement, not the FPA. *Id*. ("Petitioners were under no obligation to file a new petition for review challenging that additional order."). The court did not say petitioners were barred from filing a petition for review after the second order, just that they were not required to, and the court's discussion must be read in this context.

To deny Aclara's motion would not, as Aclara alleges, resurrect FERC's past practice of issuing tolling orders in contravention of *Allegheny*. In *Allegheny Defense Project*, this Court invalidated FERC's use of tolling orders because it improperly sheltered the agency from the consequences of statutory language that requires the availability of judicial review immediately after a deemed denial by operation of law. 964 F.3d at 16. Here, in contrast, the Notice does not prevent judicial review from being immediately available. Rather, the Notice alerts petitioners of the option to seek judicial review. Therefore, finding jurisdiction in this case does not run afoul of precedent in *Allegheny*. Moreover, as this Court made clear in *Allegheny* that it was not deciding whether it had jurisdiction where the Commission intended to substantively reconsider its prior decision, stating:

> the only question we decide is that the Commission cannot use tolling orders to change the statutorily prescribed jurisdictional consequences of its inaction. That is not the same thing as saying the Commission must actually decide the rehearing application within that thirty-day window. . .we need not decide whether or how Section 717r(a), the ripeness doctrine, or exhaustion principles might apply if the Commission were to grant rehearing for the express purpose of revisiting. . .a prior decision, and needed additional time to allow for supplemental briefing or further hearing processes.

*Allegheny Defense Project*, 964 F.3d at 16. Likewise, the concurrence in *Allegheny* concluded that "[p]ostponing judicial review until the Commission completes its rehearing process is both compelled by existing law and, in my view, quite sensible." *Id.* at 20 (Griffith, J., concurring). Therefore, a finding of jurisdiction in

this case is supported by Circuit case law.

## II.    The plain language of the Federal Power Act supports jurisdiction.

Consistent with the outcome in *EDF*, the plain language of the FPA also supports the finding of jurisdiction. Title 16 U.S.C. § 825*l* of the FPA governs judicial review of FERC orders such as the Surrender Order in this case. Section 825*l*(a) provides that any person aggrieved by a FERC order "may apply for a rehearing within thirty days after the issuance of such order." 16 U.S.C. § 825*l*(a). Here, Aclara does not dispute that American Whitewater filed a timely rehearing request. Mot. at 2. Once the rehearing request is filed, FERC may "grant or deny rehearing or . . . abrogate or modify its order without further hearing." 16 U.S.C. § 825*l*(a). If FERC does not act on the rehearing request within 30 days, "such application *may* be deemed to have been denied." *Id*. (emphasis added). Importantly, Section 825*l*(a) does not speak to what action, if any, a petitioner must take in the face of FERC inaction on a petition within 30 days, resulting in a deemed denial, other than saying the petitioner *may* treat such inaction as a denial of the petition. *See id.*

The Second Circuit's interpretation of this language is instructive and supports a finding of jurisdiction. In analyzing this language, the Second Circuit found the statute's use of the word "may" to be significant: "The use of 'may,' instead of 'shall' or 'must,' indicates to us that the clause is permissive rather than

mandatory. And, importantly, subsection (a) does not direct the aggrieved party to act at the end of the 30-day time limit for agency action." *NYSDEC*, 991 F.3d at 446. The Second Circuit pointed out that "the following subsection [825*l*(b)], which requires any petition for review to be filed within 60 days of FERC's order resolving the rehearing request, specifies the deadline by which the aggrieved party must act." *Id*. Indeed, Section 825*l*(b)—entitled "Judicial Review"—provides that an aggrieved party may obtain judicial review of a FERC order by filing a petition "within sixty days after the order of the Commission upon the application for rehearing." 16 U.S.C. § 825*l*(b). The result of a plain reading of the two subsections together is:

> the 30-day timeline in subsection (a) binds only the agency, affording the aggrieved party discretion to either proceed to federal court after the expiration of the 30-day window or wait until FERC's order denying rehearing as prescribed in subsection (b).

*NYSDEC*, 991 F.3d at 446.

The language in the Notice and the Rehearing Order are consistent with this reading of the statutory language. Section 825*l*(b) grants jurisdiction over an order of the Commission upon the application for rehearing. 16 U.S.C. § 825*l*(b). The "order" of the Commission upon the application for rehearing referred to in Section 825*l*(b) specifically references the Commission's required actions to grant or deny an application for rehearing in Section 825*l*(a). *Id.* So, jurisdiction is granted where a petitioner files a petition for judicial review based on an order

issued under Section 825*l*(a). *Id.*

The Rehearing Order is explicitly the type of order that petitioners must appeal for judicial review to be available under Section 825*l*(b). Aclara's Motion to Dismiss argues that "FERC denied American Whitewater's request for rehearing *pursuant to 16 U.S.C. 825l(a) by issuing a 'Notice* of Denial of Rehearing by Operation of Law and Providing for Further Consideration.'" Mot. at 2 (emphasis added). However, the crux of Aclara's argument is expressly belied by the plain language of the Notice and by the Rehearing Order. In FERC's Notice, FERC asserted "As provided in 16 U.S.C. § 825*l*(a), *the request for rehearing* of the above-cited order filed in this proceeding *will be addressed in a future order* to be issued consistent with the requirements of such section." *Aclara Meters, LLC*, 184 FERC ¶ 62,047 (July 21, 2023). FERC's Notice did not say that the Notice itself will be further elaborated on or modified in a future order. *See id.* Rather, FERC's Notice asserted that the very requirements of 16 U.S.C. § 825*l*(a) to "address" an application for rehearing were to be met in a *future order*. *Id.*

Aclara's motion fails to answer the critical question posed by this language: if FERC truly intended for the Notice of Denial to serve as the jurisdictional trigger for 825*l*(a), why would FERC, in that same Notice, say that FERC intends to take action on the application for rehearing in the future *under* Section 825*l*(a)? Then, in FERC's Rehearing Order, FERC noted that it was issuing the order *pursuant to*

Section 825*l*(a). *Aclara Meters, LLC*, 184 FERC ¶ 61,183 (Sept. 21, 2023). This

demonstrates that the Rehearing Order is the exact type of order that Section

825*l*(b) references for availability of judicial review.[6] This interpretation is

bolstered by FERC's prior explanations to staff that the specific language used in

orders on rehearing issued after the 30-day mark "is intended to provide guidance

to parties in discerning whether the Commission's order is final, such that

aggrieved parties may proceed to court." *Recent Changes in Commission*

*Rehearing Practice – Item A-3*, Docket No. AD20-27-000, (Sept. 17, 2020)

https://www.ferc.gov/news-events/news/recent-changes-commission-rehearing-

practice-item-3# (last visited Dec. 15, 2023). If the only "final" agency action that

triggers the judicial review provision were notices of denial by operation of law,

there would be no need for FERC to standardize language to provide guidance on

how aggrieved parties may proceed to court after the merits orders are issued.

Thus, the plain language of the FPA supports a finding of jurisdiction.

### III.    Policy and equitable considerations strongly favor jurisdiction.

---

[6] Aclara's motion also fails to grapple with FERC's actions in this very case which suggest that FERC believes jurisdiction exists. Under Section 825*l*(b), upon the filing of a petition, the Court immediately should have jurisdiction. 16 U.S.C. § 825*l*(b). After the Court has jurisdiction, FERC is required to file the "record upon which the order complained of was entered," which transfers jurisdiction on the ability to alter the order from FERC to the Court, thereby stripping FERC of its ability to modify or set aside, in whole or in part, any finding or order made or issued by it. *Id.*

Because controlling case law, the statutory language and the language contained in FERC's actions after its Surrender Order all support the Court finding jurisdiction over American Whitewater's petition for review, the Court's analysis can end there. However, additional policy and equitable considerations also support the Court finding jurisdiction and denying Aclara's motion.

Relevant policy considerations include the purposes of rehearing. Rehearing affords the Commission the opportunity to reconsider its decision before a party proceeds to court. *Ameren Servs. Co. v. FERC*, 330 F.3d 494, 499 n.8 (D.C. Cir. 2003) ("The very purpose of rehearing is to give the Commission the opportunity to review its decision before facing judicial scrutiny.") Rehearing also serves the dual purpose of allowing an aggrieved party an opportunity to avoid the time and substantial expense of litigation by asking the Commission to take a second look at a decision. Additionally, FERC both encourages and assists stakeholder involvement in the relicensing and surrender process.[7]

---

[7] Section 319 of the Federal Power Act created a FERC Office of Public Participation to "coordinate assistance to the public with respect to authorities exercised by the Commission" and "coordinate assistance available to persons intervening or participating or proposing to intervene or participate in proceedings before the Commission." 16 U.S.C. § 825q-1. The Commission issued a report stating that the mission of the Office of Public participation was to "coordinate and provide assistance to members of the public to facilitate participation in Commission proceedings" in order to solicit broader participation in matters before the Commission. *Office of Public Participation* (June 24, 2021) https://www.ferc.gov/media/ferc-report-office-public-participation (last visited Dec. 15, 2023).

Aclara's arguments run afoul of the very purposes of rehearing. Aclara argues that American Whitewater should have anticipated its objection to the Commission's yet to be issued order including its novel interpretation of the Clean Water Act that is the subject of this Petition for Review and filed its petition in advance of the Commission's September 21, 2023 order. *See* Mot. at 5. Requiring American Whitewater to file a Petition for Review in advance of the Commission's merits determination is contrary to the purpose rehearing process, requires the filing of a judicial appeal of an order that the Commission has not yet issued, undermines the purpose of FERC's Office of Public Participation, and would result in significant effort and expense by stakeholders needing to expend the time and incur costs for legal counsel and costs related to the filing of a Petition for Review that may be unnecessary. Notably, the third issue raised by American Whitewater in its rehearing request dealing with the applicability of Section 401(a)(1) of the Clean Water Act to this license surrender proceeding, was not addressed by the Commission in its *Order on Surrender of License* nor in the Commission's *Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration*. *See Aclara Meters, LLC*, 184 FERC ¶ 62,047 (July 21, 2023); *see also Aclara Meters, LLC*, 183 FERC ¶ 62,095 (May 22, 2023).

Aclara's position means that no party, including a licensee, would be able to challenge a merits order that significantly alters the original order. As this Court

has highlighted previously, the law of this Circuit does not allow for such a "perversion" of the "policy requiring timely filings of motions for reconsideration:"

> Louisiana could not be expected to seek rehearing of decisions that, on their faces, represented a complete victory for it. Only when the agency by interpretation made the victory less than complete–after the time for rehearing had passed–did Louisiana have reason to seek review. If review were unavailable in these circumstances, then an 'agency [could] enter an ambiguous or obscure order, willfully or otherwise, wait out the required time, then enter an explanatory order that would extinguish the review rights of parties prejudicially affected.'

*La. Pub. Serv. Comm'n v. FERC*, 482 F.3d 510, 517 (D.C. Cir. 2007) (quoting *Sam Rayburn Dam Elec. Coop. v. FPC*, 515 F.2d 998, 1007 (D.C.Cir.1975)). This type of perversion could have occurred in this case, where the Notice made clear FERC's intention to "modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper." *Aclara Meters, LLC*, 184 FERC ¶ 62,047 (July 21, 2023). So, in this case, if FERC had substantially modified its Surrender Order to Aclara's detriment, or even set it aside as the Notice reserves FERC's authority to do, Aclara would not be able to petition for review of the Surrender Order because it had not filed a petition within 60 days of the deemed denial. This would be an absurd result.

Aclara's argument also significantly undermines the purposes of rehearing for other stakeholders. Unlike cases where FERC issues an outright denial of a

rehearing request, FERC's Notice leaves stakeholders in a FERC relicensing or surrender proceeding in a sort of rehearing purgatory where it is left to guess what the Commission might decide on its rehearing request. Stakeholders are faced with a Cornelian dilemma, needing to choose between needlessly expending resources or losing their ability to appeal a future merits determination.[8] Aclara's argument places an undue burden on stakeholders, limiting them from fully participating in FERC relicensing and surrender proceedings. Filing a Petition for Review in the Court of Appeals requires stakeholders to incur costs for hiring legal counsel, drafting a Petition for Review, and filing fees. Non-governmental organizations such as American Whitewater, resource agencies, and individuals often lack the resources to pursue relief in the courts, and to the extent they do, cannot afford to do so needlessly. In practice, such a requirement would limit judicial review to relicensing participants who can afford to file routine petitions for review.

Finally, Aclara's argument runs afoul of principles of judicial economy. The consequences of requiring stakeholders to file their Petition for Review prior to a merits determination in every case where there is a possibility that they may need to seek relief after the merits determination would unduly burden this Court with cases that would later be withdrawn by the petitioner if the appeal was

---

[8] This is especially true for stakeholders unfamiliar with legal intricacies of FERC jurisdictional rules and who would reasonably read FERC's Notice as indicating an *order* on the rehearing request would be forthcoming.

unwarranted. Principles of judicial economy require that courts limit the exercise of the court's resources due to the ripeness, mootness, and other bases. Limited judicial resources should be reserved for cases where disputes have not been resolved through the administrative appeals process provided In statute.

This Court has noted it "is not without authority to consider the equities" in situations like this. In *Sam Rayburn Dam Electric Cooperative v. FERC*, the Court recognized it "must act within the bounds of the statute and without intruding upon the administrative province," but also that:

> it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action. The purpose of the judicial review is consonant with that of the administrative proceeding itself, to secure a just result with a minimum of technical requirements.

515 F.2d 998, 1007 (D.C. Cir. 1975) (quoting *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939)). Here, exercising the Court's equitable authority to find jurisdiction would be entirely consistent with harmonizing the trio of germane cases—*Allegheny*, *EDF*, and *Sierra Club*—all of which found petitioners to have met their burden for establishing jurisdiction.[9] Given FERC's language in its Notice, it was entirely reasonable for American Whitewater to wait to file its petition for review until FERC ruled on the merits of its rehearing request,

---

[9] Additionally, Aclara has not argued it has been prejudiced by the small additional time FERC took to issue its Rehearing Order.

especially considering American Whitewater raised a novel issue—the application

of Clean Water Act § 401—that FERC had entirely ignored in its Surrender Order.

*See also Aclara Meters, LLC*, 183 FERC ¶ 62,095 (May 22, 2023).

## **CONCLUSION**

For the reasons stated, American Whitewater respectfully requests the Court deny

Aclara's Motion to Dismiss.

Dated this 18th Day of December, 2023

/s/ Robert A. Nasdor
D.C. Bar No. 64898
American Whitewater
65 Blueberry Hill Lane
Sudbury, Massachusetts 01776
(617) 584-4566
bob@americanwhitewater.org
*Counsel for Petitioner American*
*Whitewater*

/s/ Kevin Cassidy
D.C. Bar No. 64942
Earthrise Law Center at Lewis & Clark
Law School
10101 S Terwilliger Blvd
(781) 659-1696
Portland, OR 97219
cassidy@lclark.edu
*Counsel for Petitioner American*
*Whitewater*

/s/ Sean Mahoney
DC Cir Bar No 64602
Conservation Law Foundation
53 Exchange St. Suite 200
Portland, ME 04101
(207) 210-6439
smahoney@clf.org
*Counsel for Intervenor Conservation*
*Law Foundation*

/s/ Charles Owen Verrill, Jr
DC Cir Bar No 14852
1055 Thomas Jefferson St, NW
Washington, DC 20007
(202) 390.8245
charlesverrill@gmail.com
*Counsel for Intervenor Maine Rivers*

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
AND TYPE FACE LIMITS

I hereby certify this document complies with the type-volume limitation of Fed. R.

App. 27(d)(2)(a) and Circuit Rule 27(a) (2) and typestyle requirements of Fed. R.

App. P. 32(a).

/s/ Robert A. Nasdor
D.C. Bar No. 64898
American Whitewater
65 Blueberry Hill Lane
Sudbury, Massachusetts 01776
(617) 584-4566
bob@americanwhitewater.org
*Counsel for Petitioner American Whitewater*

**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____  )
  )
AMERICAN WHITEWATER,  )
            Petitioner,  )
  )
CONSERVATION LAW  )
FOUNDATION, MAINE RIVERS,  )
            Intervenors,  )
  )
v.  )  No. 23-1291
  )
FEDERAL ENERGY  )
REGULATORY COMMISSION,  )
            Respondent,  )
  )
ACLARA METERS, LLC,  )
            Intervenor,  )
_____  )

**CERTIFICATE OF SERVICE**

Pursuant to Rule 25(d) of the Federal Rules of Appellate Procedure and

Circuit Rule 25, I hereby certify that, on November 20, 2023, I caused the forgoing

document to be electronically filed using the Court's CM/ECF system, which

automatically provides email notification of the filing to the attorneys of record in

the above captioned docket.

Dated this 18th Day of December, 2023

/s/ Robert A. Nasdor
Robert A. Nasdor
D.C. Bar No. 64898
Northeast Stewardship & Legal Director
AMERICAN WHITEWATER
65 Blueberry Hill Lane
Sudbury, Massachusetts 01776
(617) 584-4566
bob@americanwhitewater.org

*Counsel for Petitioner American Whitewater*